IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

CHARLES E. SMITH, #P10893,
      Petitioner,

vs.                                    Case No.: 3:05cv165/MCR/EMT

JAMES R. McDONOUGH,
      Respondent.
_____/

## REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's amended petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (Doc. 13).  Respondent filed an answer and relevant portions of the state court record (Docs. 24, 25).  Petitioner filed a reply (Doc. 33).

The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N. D. Fla. Loc. R. 72.2(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.      BACKGROUND AND PROCEDURAL HISTORY

The procedural background of this case is undisputed by the parties and established by the state court record.  Following a jury trial in the Circuit Court for Escambia County, Florida, on March 27–29, 2000, Petitioner was convicted of first degree murder for the shooting of his wife (Doc. 25, Ex. B, Ex. C).  He was sentenced on March 29, 2000, to life imprisonment without the possibility of parole (*id.*, Ex. C at 473–74).  Petitioner appealed his conviction and sentence to the Florida First District Court of Appeal (First DCA) (*id.*, Ex. D).  The appellate court affirmed the

conviction and sentence per curiam without opinion on April 23, 2001, with the mandate issuing May 9, 2001 (*id.*, Ex. F).  Smith v. State, 784 So. 2d 1109 (Fla. 1st DCA Apr. 23, 2001) (Table).

On July 16, 2001, Petitioner filed a motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Doc. 25, Ex. G).  The trial court denied the motion on December 28, 2001 (*id.*, Ex. H).  Petitioner appealed the decision to the First DCA, and the appellate court affirmed the decision per curiam without written opinion on May 1, 2002, with the mandate issuing May 29, 2002 (*id.*, Ex. I).  Smith v. State, 816 So. 2d 614 (Fla. 1st DCA May 1, 2002) (Table).

On October 29, 2001, while his Rule 3.850 motion was pending, Petitioner filed a petition for writ of habeas corpus with the First DCA alleging ineffective assistance of appellate counsel (Doc. 25, Ex. J).  The First DCA denied the petition per curiam without written opinion on December 5, 2001, and denied Petitioner's motion for rehearing on December 28, 2001 (*id.*, Ex. K).  Smith v. State, 806 So. 2d 471 (Fla. 1st DCA Dec. 5, 2001) (Table).

On January 8, 2002, Petitioner filed a motion post-conviction relief pursuant to Rule 3.853 of the Florida Rules of Criminal Procedure seeking post-conviction DNA testing (*see* Doc. 25, Ex. M, attached docket).  The trial court denied the motion on January 30, 2002 (*id.*).  Petitioner filed a motion for rehearing, but the trial court denied the motion on March 27, 2002 (*id.*).  Petitioner did not appeal the decision (*id.*).

On April 15, 2002, Petitioner filed another Rule 3.853 motion seeking post-conviction DNA testing (*see* Doc. 25, Ex. M, attached docket).  The trial court denied the motion on June 5, 2002 (*id.*).  Petitioner did not appeal the decision (*id.*).

On June 14, 2002, Petitioner filed a third Rule 3.853 motion seeking post-conviction DNA testing (Doc. 25, Ex. L).  The trial court denied the motion on August 23, 2002 (*id.*, Ex. M).  Petitioner attempted to appeal the decision to the First DCA (*id.*, Ex. M at 37–38, Ex. N), but the appellate court dismissed the appeal for failure to comply with orders of the court (*see id.*, Ex. V at 2 n.1).  *See* www.1dca.org (online docket of Florida First District Court of Appeal), Smith v. State, Case No. 1D02-3940, docket entry dated Dec. 3, 2002.  On April 18, 2003, Petitioner filed a motion for reinstatement of the appeal, but the First DCA denied the motion on May 19, 2003 (*see* Doc. 25, Ex. O).  *See* www.1dca.org (online docket of Florida First District Court of Appeal), Smith v. State,

Case No. 1D02-3940, docket entry dated May 19, 2003.  Petitioner filed a notice of appeal to the Florida Supreme Court, *see id.*, docket entry dated June 16, 2003, which the Florida Supreme Court construed as a petition for writ of mandamus and denied (*see* Doc. 25, Ex. Q at 77).

On November 7, 2002, Petitioner filed a second Rule 3.850 motion (Doc. 25, Ex. P).  The trial court denied the motion on December 15, 2002 (*id.*, Ex. Q).  Petitioner appealed the decision to the First DCA, and the appellate court affirmed the decision per curiam without written opinion on December 19, 2003, with the mandate issuing February 19, 2004 (*id.*, Exs. R, T).  Smith v. State, 865 So. 2d 487 (Fla. 1st DCA Dec. 19, 2003) (Table).

On September 16, 2003, Petitioner filed a petition for writ of mandamus with the First DCA, but the First DCA denied the petition per curiam on February 20, 2004, on the ground that other adequate remedies existed to address Petitioner's claims.  Smith v. State, 866 So. 2d 766 (Fla. 1st DCA Feb. 20, 2004).

On March 3, 2004, Petitioner filed another petition for writ of mandamus with the First DCA (Doc. 25, Ex. U).  The First DCA denied the petition in a written opinion issued June 10, 2004, on the ground that the claim was procedurally barred (*id.*, Ex. V).  Smith v. State, 874 So. 2d 1260 (Fla. 1st DCA June 10, 2004).

On August 19, 2004, Petitioner filed a motion to correct illegal sentence pursuant to Rule 3.800(a) of the Florida Rules of Criminal Procedure (Doc. 25, Ex. W).  The trial court denied the motion as frivolous on December 6, 2004 (*id.*, Ex. X).  Petitioner appealed the decision to the First DCA, and the appellate court affirmed the decision per curiam without written opinion on May 19, 2005, with the mandate issuing August 5, 2005 (*id.*, Exs. Y, AA).  Smith v. State, 906 So. 2d 1064 (Fla. 1st DCA May 19, 2005) (Table).

Petitioner filed the instant habeas action on April 28, 2005 (Doc. 1 at 6).  Respondent concedes that the petition is timely (Doc. 24 at 5).

II.   STANDARD OF REVIEW

Section 2254(a) of Title 28 provides, "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws of the United States."  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for

federal habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub. L. 104-132, § 104, 110 Stat. 1214, 1218–19.

Section 2254 now provides:

(d)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254 (West Supp. 2001).

The United States Supreme Court explained the framework of review under § 2254(d)(1) in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[1]  The appropriate test in habeas cases was described by Justice O'Connor as follows:

In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

[1]Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99, 120 S. Ct. at 1499–1503, 1511–16); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13, 120 S. Ct. at 1518–23).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

*Id.*, 529 U.S. at 412–13; Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).

The Eleventh Circuit has developed a three-step process for applying the Williams test to any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal state court proceeding. *See* Wellington v. Moore, 314 F.3d 1256, 1260–61 (11th Cir. 2002); Robinson v. Moore, 300 F.3d 1320, 1343–45 (11th Cir. 2002). First, the court must ascertain the controlling legal principles that are clearly established by the Supreme Court at the time of the state court adjudication. Wellington, 314 F.3d at 1260; Robinson, 300 F.3d at 1343. Second, the court must determine whether the state court adjudication was contrary to the clearly established Supreme Court law. Wellington, 314 F.3d at 1260, Robinson, 300 F.3d at 1344. "The 'contrary to' clause in § 2254(d)(1) 'suggests that the state court's decision must be substantially different' from the relevant Supreme Court precedent." Wellington, 314 F.3d at 1260 (quoting Fugate v. Head, 261 F.3d 1206, 1216 (11th Cir. 2001), *cert. denied*, 535 U.S. 1104, 122 S. Ct. 2310, 152 L. Ed. 2d 1065 (2002) (quoting Williams, 529 U.S. at 405)). "Although a state court's decision that 'applies a rule that contradicts' the governing Supreme Court law is 'contrary,' a state court decision that applies 'the correct legal rule' based on Supreme Court law to the facts of the petitioner's case would not fit within the 'contrary to' clause even if the federal court might have reached a different result relying on the same law." Wellington, 314 F.3d at 1260 (citing and quoting Williams, 529 U.S. at 404–06). If the state court applied the correct Supreme Court precedent, and the United States Supreme Court, faced with materially indistinguishable facts, has not reached a decision different from the decision reached by the state court in the petitioner's case, the case does not fit within the "contrary to" clause, and the federal habeas court must proceed to the third step and determine whether the state court "unreasonably applied the relevant Supreme Court authority." Fugate, 261 F.3d at 1216. Likewise, if the facts of the Supreme Court cases and the petitioner's case are not substantially similar, "a state court decision that applies 'the correct legal rule' based on Supreme Court law to the facts of the petitioner's case would not fit within the 'contrary to' clause even if the federal court might have reached a different result relying on the same law." *Id.* (citing and quoting Williams, 529 U.S. at 406). A state court is not required to cite Supreme Court cases or even be

aware of the cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002).

The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 410. The Supreme Court has explained that "a federal habeas court may not issue a writ under the unreasonable application clause 'simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'" Bell v. Cone, 535 U.S. 685, 122 S. Ct. 1843, 1850, 152 L. Ed. 2d 914 (2002) (quoting Williams, 529 U.S. at 411). Indeed, "[t]he gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." Lockyer v. Andrade, 538 U.S. 63, 123 S. Ct. 1166, 1175, 155 L. Ed. 2d 144 (2003). A state court's incorrect application of clearly established law will be held to be reasonable and not warrant a writ unless "thorough analysis by a federal court produces a firm conviction that [the state court] judgment is infected by constitutional error." Williams, 529 U.S. at 389. "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations." Yarborough v. Alvarado, 541 U.S. 652, 124 S. Ct. 2140, 2149, 158 L. Ed. 2d 938 (2004) (citation omitted). Although § 2254(d)(1) is concerned only with federal law as clearly established by the Supreme Court, this court may look to circuit precedent to demonstrate reasonable applications of Supreme Court precedent. Van Poyck v. Fla. Dep't of Corrections, 290 F.3d 1318, 1322 n.4 (11th Cir. 2002).

In deciding whether a state court decision involved "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding" under § 2254(d)(2), determinations of fact are "presumed to be correct," unless the presumption is rebutted by Petitioner "by clear and convincing evidence." § 2254(e)(1); see Miller-El v. Cockrell, 537 U.S. 322, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2).") (dictum); Fugate, 261 F.3d at 1215 (quoting 28 U.S.C. §

2254(e)(1)); <u>Parker v. Head</u>, 244 F.3d 831, 835–36 (11th Cir. 2001) (citing § 2254(d)(2) and (e)(1)); *see also* <u>Crawford v. Head</u>, 311 F.3d 1288 (11th Cir. 2002) (explaining that the new statute provides a "highly deferential standard of review" of the state court's factual determinations). Thus, not only must the state court's factual determination have been unreasonable, but the court's factual findings must be shown unreasonable by clear and convincing evidence. *See* <u>Callahan v. Campbell</u>, 427 F.3d 897, 926 (11th Cir. 2005) (citing § 2254(e)(1); <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1308 (11th Cir. 2004) ("[Petitioner] has not shown by clear and convincing evidence that the Florida Supreme Court's factual finding . . . [wa]s unreasonable in light of the evidence in the state court record.")).

III.    EXHAUSTION AND DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[2] thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." <u>Duncan v. Henry</u>, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)). To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim. <u>Duncan</u>, 513 U.S. at 365–66; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); <u>Picard</u>, 404 U.S. at 277–78.

The Supreme Court has offered the following guidance for determining whether a habeas petitioner has met the "fair presentation" requirement. In <u>Picard v. Connor</u>, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to

---

[2]Section 2254 provides, in pertinent part:

(b)(1)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
    (A)  the applicant has exhausted the remedies available in the courts of the State; or
    (B) (i)  there is an absence of available State corrective process; or
       (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.  404 U.S. at 277.  In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," *id.* at 278, the Court rejected the contention that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is insufficient to make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court.  In Anderson v. Harless, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982), the habeas petitioner was granted relief on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt.  *Id.* at 7 (citing Sandstrom v. Montana, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)).  The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law." *Id.* (internal quotation marks omitted).  The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited case advanced a federal claim.  *Id.* at 7 & n.3.  Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought.  *Id.*

Years later, the Supreme Court readdressed the "fair presentation" requirement in Duncan v. Henry, 513 U.S. 364 (1995).  The Duncan Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[3]  The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process

---

[3]The petitioner in Duncan raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal.  Presented with a state constitutional claim, the state court applied state law in resolving the appeal.

of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court." *Id.* at 365–66.  Recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that  "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."  Baldwin v. Reese, 541 U.S. 27, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004). The Baldwin Court commented that "a litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'"  *Id.*  With regard to this statement, the Eleventh Circuit stated in McNair v. Campbell, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion.  However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'"McNair [v. Campbell], 315 F. Supp. 2d at 1184 (quoting Vasquez v. Hillery, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)).  This is consistent with settled law established by the Supreme Court. . . . We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

416 F.3d at 1302–03 (citations omitted).[4]

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, i.e., procedurally barred from federal review.  Bailey v. Nagle, 172 F.3d 1299, 1302–03 (11th Cir. 1999).  This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default.  *See* Coleman v. Thompson, 501

---

[4]In  his initial brief before the Court of Criminal Appeals, the petitioner cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law."  McNair v. Campbell, 416 F.3d 1291, 1303 (11th Cir. 2005).  The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments.  *Id.*

U.S. 722, 734–35 & n.1, 111 S. Ct. 2546, 2555 & n.1, 115 L. Ed. 2d 640 (1991); Caniff v. Moore, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); Chambers v. Thompson, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord* Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993); Parker v. Dugger, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991).  In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine.  Bailey, 172 F.3d at 1303.  In the second instance, a federal court must determine whether the last state court rendering judgment clearly and expressly stated its judgment rested on a procedural bar.  *Id*.  A federal court is not required to honor a state's procedural default ruling unless that ruling rests on adequate state grounds independent of the federal question.  *See* Harris v. Reed, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989).  The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question.  Lee v. Kemna, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002).  The Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision.  Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001).  First, the last state court rendering judgment must clearly and expressly state it is relying on state procedural rules to resolve the federal claim.[5]  *Id.*  Second, the state court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law.  Third, the state procedural rule must be adequate.  *Id.*  The adequacy requirement has been interpreted to mean the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion.  *Id.*

A petitioner can overcome a procedural default in two narrow circumstances.  The petitioner must either show cause and prejudice or a fundamental miscarriage of justice in order for the federal habeas court to reach the merits of a claim.  Henderson v. Haley, 353 F.3d 880, 892 (11th Cir. 2003);

---

[5]The federal court should honor the procedural bar even if the state court alternatively reviewed the claim on the merits.  Marek v. Singletary, 62 F.3d 1295, 1301–02 (11th Cir. 1995); Alderman v. Zant, 22 F.3d 1541, 1549 (11th Cir. 1994).

Tower, 7 F.3d at 210; Parker, 876 F.2d 1470.  "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim."  McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986)).  Lack of counsel or ignorance of available procedures is not enough to establish cause.  Tower, 7 F.3d at 210.  Furthermore, the Eleventh Circuit has held that because there is no constitutional right to an attorney in state post-conviction proceedings, any ineffectiveness of post-conviction counsel cannot be "considered cause for the purposes of excusing . . . procedural default that occur[s] . . . at the state collateral post-conviction level."  Henderson, 353 F.3d 892 (citing 28. U.S.C. § 2254(i); Coleman v. Thompson, 501 U.S. 722, 752 (1991); In re Magwood, 113 F.3d 1544, 1551 (11th Cir. 1997); Johnson v. Singletary, 938 F.2d 1166, 1174–75 (11th Cir. 1991)).  To establish prejudice, a petitioner must show that there is "at least a reasonable probability that the result of the proceeding would have been different."  Id.

Alternatively, to satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995).  "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him."  Schlup, 513 U.S. at 327.  Further,

> [A] substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.

Id.

Within this framework, the court will review Petitioner's claims.

V.     PETITIONER'S CLAIMS

A.     Ground One:  Denial of effective assistance of counsel.  Counsel failed to object to witness Roberta Bright['s] statements, witness could not identify the defendant in the courtroom, witness stated she had known the defendant for several years, credibility of witness affected the outcome of the trial

(Doc. 13 at 4).  In Ground One, Petitioner contends he was denied effective assistance of counsel because counsel failed to impeach or object to the admission of testimony of Roberta Bright (*id.*, Ground One, continuation page).  Petitioner states that Ms. Bright testified that she had known him for three or four years, and he had visited her apartment, but she was unable to identify Petitioner in the courtroom at the trial (*id.*). Petitioner contends that counsel's failure to impeach Ms. Bright or seek exclusion of her testimony allowed the jury to be misled with inaccurate information (*id.*).

Respondent explicitly states that Petitioner exhausted this claim by presenting it in his first Rule 3.850 motion (*see* Doc. 24 at 6; Doc. 25, Ex. P at 13, 14).

       1.      Clearly Established Supreme Court Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  To obtain relief under Strickland, a petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.  466 U.S. at 687–88.  It is the petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable and that he suffered prejudice as a result thereof.  *Id.* at 687.  If a petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief.  *Id.* at 697.

> In determining whether counsel's performance was reasonable, the Court instructed:
>
> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.  *Cf.* Engle v. Isaac, 456 U.S. 107, 133–134, 102 S. Ct. 1558, 1574-1575, 71 L. Ed. 2d 783 (1982).  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."  *See* Michel v. Louisiana, *supra*, 350 U.S. at 101, 76 S. Ct. at 164.

Strickland, 466 U.S. at 689.

As to the prejudice prong of the Strickland, the Supreme Court has cautioned that "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'"  Strickland, 466 U.S. at 693.  However, the Court has also clarified that a petitioner need not demonstrate it 'more likely than not, or prove by a preponderance of evidence,' that counsel's errors affected the outcome.  Strickland, 466 U.S. at 693–94.  Instead,

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.

Id. at 694.  Indeed, it would be "contrary to" the law clearly established in Strickland for a state court to reject an ineffectiveness claim for failing to prove prejudice by a preponderance of the evidence.  Williams v. Taylor, 529 U.S. at 405–06.

The prejudice assessment does "not depend on the idiosyncracies of the particular decisionmaker," as the court should presume that the judge or jury acted according to law.  Strickland, 466 U.S. at 694–95.  "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  Id. at 695.

> In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury.  Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways.  Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect.  Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.  Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors. . . . [T]he ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged.

Id. at 695–96.

    2.    Federal Review of State Court Decision

The state court's written opinion identified the Strickland standard as the applicable standard for evaluating claims of ineffective assistance of counsel (id., Ex. H at 1).  The state court found that

Petitioner failed to allege how he suffered prejudice as a result of counsel's alleged omission; therefore, the court denied the claim (*id.*).

The state court correctly identified the two-prong <u>Strickland</u> standard as applicable to claims of ineffective assistance of counsel.  Additionally, the state court's factual findings are presumed correct as Petitioner has failed to rebut those findings with clear and convincing evidence. Therefore, Petitioner is entitled to federal habeas relief only if he demonstrates that the state court decision was based upon an unreasonable application of <u>Strickland</u>.

With regard to counsel's performance, the Eleventh Circuit has stated:

> Trying cases is no exact science.  And as a result, we must never delude ourselves that the fair review of a trial lawyer's judgment and performance is an activity that calls for great precision or for a categorical approach.  When reviewing whether an attorney is ineffective, courts "should always presume strongly that counsel's performance was reasonable and adequate."  <u>Atkins v. Singletary</u>, 965 F. 2d 952, 958 (11th Cir. 1992).  And, "a court should be highly deferential to those choices . . . that are arguably dictated by a reasonable trial strategy." <u>Devier v. Zant</u>, 3 F. 3d 1445, 1450 (11th Cir. 1993).  Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it can be shown that no reasonable lawyer, in the circumstances would have done so.

<u>Rogers v. Zant</u>, 13 F. 3d 384, 386 (11th Cir. 1994); <u>Grayson v. Thompson</u>, 257 F.3d 1194, 1216 (11th Cir. 2001) (to show counsel's performance was unreasonable, defendant must establish that no competent counsel would have taken the action that his counsel did take); <u>Chandler v. United States</u>, 218 F.3d 1305, 1313 (11th Cir. 2000) (issue is not what is possible, prudent, or appropriate, but what is constitutionally compelled) (citing <u>Burger v. Kemp</u>, 483 U.S. 776, 107 S. Ct. 3114, 3126, 97 L. Ed. 2d 638 (1987)).

However, not every strategic decision passes constitutional muster.  Whether a particular decision by counsel was a tactical one is a question of fact, <u>Hardwick v. Crosby</u>, 320 F.3d 1127, 1163 (11th Cir. 2003), and the state court's resolution of that issue enjoys a strong presumption of correctness.  *See* 28 U.S.C. § 2254(e)(1); <u>Jackson v. Herring</u>, 42 F.3d 1350, 1367 (11th Cir. 1995); <u>Horton v. Zant</u>, 941 F.2d 1449, 1462 (11th Cir. 1991). Whether a particular tactical decision was a reasonable one, however, is a question of law, <u>Hardwick</u> 320 F.3d at 1163; <u>Jackson</u>, 42 F.3d at 1367; <u>Horton</u>, 941 F.2d at 1462.

In the instant case, the trial transcript shows that Ms. Bright testified that shortly before Carrie Smith, Petitioner's wife, was killed, Petitioner asked her (Ms. Bright) to encourage his wife to reconcile their marriage (Doc. 25, Ex. C at 56–58).  When the prosecutor asked Ms. Bright whether she saw Carrie Smith's husband in the courtroom, she testified as follows:

Q [by the prosecutor]. Do you know Charles Smith?

A.      Yes, I do.

Q.      Do you see him in the courtroom?

A.      (Witness indicating)

Q.      You're pointing?  Who are you pointing to?

A.      I'm pointing to that — I don't know.

Q.      Do you know Charles Smith?

A.      Yes, I do.

Q.      How long have you known him?

A.      For about three to four years.

Q.      Do you see him in this courtroom?

A.      Right there.

Q.      Okay.  Now describe what he's wearing.

A.      Huh?

Q.      Describe what he is wearing.

A.      White shirt and dark trousers, black shoes and socks.

. . . .

CROSS-EXAMINATION

Q [by defense counsel].       You had a difficult time identifying —

Q.      Because I don't have on my glasses.

(*id.*).  This excerpt from the state court record confirms that defense counsel impeached Ms. Bright's testimony by questioning her about her difficulty identifying Petitioner.  Furthermore, the jury was able to observe first hand any hesitation that Ms. Bright exhibited when she identified Petitioner as the man who asked her to speak to Carrie Smith.  Therefore, Petitioner failed to show that counsel's impeachment was deficient or that there is a reasonable probability that the outcome of trial would

have been different if counsel had further questioned Ms. Bright about her identification of Petitioner as the man who asked her to convince Carrie to reconcile with him.  Additionally, Petitioner has failed to show a reasonable probability that the trial court would have had a basis under Florida law for excluding the testimony if counsel had made a motion to exclude it, as the evidence was relevant and admissible, and Petitioner has failed to demonstrate that its probative value was substantially outweighed by the danger of misleading the jury.  *See* Fla. Stat. §§ 90.402–.403.  Therefore, the state court reasonably concluded that Petitioner failed to demonstrate a reasonable probability that the result of his trial would have been different if counsel had further questioned Ms. Bright about her identification of Petitioner or otherwise sought exclusion of her testimony.

> B.      Ground Two:  Denial of effective assistance of counsel.  Witness stated she saw the defendant cleaning two guns, but the defendant never own[ed] a gun. Witness Brenda Barge testified and contradicted Frances Gardner['s] testimony. Witness suffer[ed] from Lupus; unable to remember anything.  Counsel failed to object to witness['s] inconsistent statements.

(Doc. 13 at 4).  In support of his ineffective assistance of counsel claim, Petitioner states that Frances Gardner suffered from Lupus, which causes a person to have anxiety and difficulty remembering things (*id.*, Ground Two, continuation page).  Petitioner additionally alleges that Ms. Gardner  admitted that over a long period of time, heavy doses of medication caused her to have difficulty with her memory (*id.*).  Petitioner states that the trial testimony of Ms. Brenda Barge, namely, that Petitioner did not own a gun and had borrowed one of her guns on several occasions, contradicted Ms. Gardner's testimony that she saw Petitioner cleaning two guns (*id.*).  Petitioner contends defense counsel performed deficiently by failing to impeach Ms. Gardner by asking her to describe the gun that she saw Petitioner cleaning (*id.*; Doc. 33 at 4).  Furthermore, Petitioner contends counsel should have objected to admission of the testimony on the ground that it was unreliable because it was contradicted by Ms. Barge's testimony that Petitioner did not own a gun (*id.*).  Petitioner states that the outcome of trial would have been different if counsel had impeached or objected to Ms. Gardner's testimony (*id.*).

Respondent explicitly states that Petitioner exhausted this claim by raising it in his first Rule 3.850 motion (*see* Doc. 24 at 12; Doc. 25, Ex. G at 13, 16).

1.      Clearly Established Supreme Court Law

As discussed *supra*, the two-prong <u>Strickland</u> standard is the legal standard applicable to claims of ineffective assistance of counsel.

2.      Federal Review of State Court Decision

The state court correctly identified the <u>Strickland</u> standard and, applying that standard, found that Petitioner failed to allege how he suffered prejudice as a result of counsel's alleged omissions (*id.*, Ex. H).  Therefore, the court denied the claim (*id.*).

The undersigned agrees with the state court that Petitioner has failed to show that he was prejudiced by defense counsel's alleged error.  Frances Gardner testified that she was Carrie Smith's grandmother (Doc. 25, Ex. C at 59–60).  She testified that she visited Carrie and Petitioner's apartment when they were living together and observed two firearms in the apartment (*id.* at 61). She stated that she saw Petitioner sitting on the couch cleaning one gun, and when he was finished, he went to another room and retrieved another gun (*id.*).

The trial transcript establishes that defense counsel brought out the following facts on cross-examination:  Ms. Gardner suffered from Lupus, for which she was heavily medicated; her medication caused her to fret and become anxious; and the medication caused her to have trouble recollecting some things, especially things that occurred a long time ago (*id.* at 63).  Counsel also brought out the fact that when Ms. Gardner saw Petitioner with the guns, it was during the time he was training to become a policeman, and the only thing she observed him doing with the guns was cleaning them (*id.* at 65–66).

Later in the trial, Brenda Barge testified that Petitioner borrowed her pistol approximately three times after he graduated from the law enforcement academy, but he never borrowed it while he was attending the academy (*id.* at 72–75).  She testified that Petitioner told her that he was going to a shooting range to practice with her pistol because he did not know the type of gun he was going to buy (*id.* at 75, 83–84).  Ms. Barge testified that when he borrowed her pistol, he usually returned it the same day (*id.* at 75).  She further testified that he borrowed her pistol on March 3, 1999, two days before Carrie Smith was murdered, and he did not return it, so she went to his apartment on the evening of March 5, and retrieved it (*id.* at 75–77).

Initially, Petitioner has failed to show a reasonable probability that a reasonable juror would have had reasonable doubt as to his guilt if defense counsel had asked Ms. Gardner to describe the gun that she saw Petitioner cleaning.  Additionally, Petitioner misstates the record by asserting that Ms. Barge testified that Petitioner did not own a gun; the record demonstrates that she testified that Petitioner borrowed her pistol and that he was deciding on the type of gun he was going to purchase, but she did not testify that he did not own a gun.  Furthermore, Ms. Gardner did not testify that Petitioner owned the guns that she saw him cleaning.  Therefore, Petitioner has failed to show that Ms. Barge's testimony contradicted Ms. Gardner's testimony in this regard.  Moreover, even if Ms. Barge's testimony contradicted Ms. Gardner's, a contradiction in the testimony of two witnesses does not constitute a basis for objection to the admissibility of the testimony of either witness; rather, it is a credibility issue to be determined by the jury.  Because Petitioner has failed to show that he was prejudiced by counsel's failure to ask Ms. Gardner to describe the gun, or counsel's failure to object to the admission of Ms. Gardner's testimony on the ground that it was contradicted by Ms. Barge's, the state court decision denying his claim was not an unreasonable application of Strickland.

     C.    <u>Ground Three:  Denial of effective assistance of counsel, evidence to prove a fact [sic].  Prosecution lack of predicate.  A watch that was admitted in evidence proving the fact that the defendant['s] wife had been over to the apartment, and took the watch that was giving [sic] to the defendant as a graduation gift.</u>

(Doc. 13 at 5).  Petitioner asserts that defense counsel failed to present evidence showing that Carrie Smith had a key to Petitioner's apartment, that she took Petitioner's watch and was wearing it, and that she continued to come over to his apartment (*id.*, Ground Three, continuation page).  He contends that this evidence would have shown that he did not have a premeditated design to kill her because he did not have to go out and search for her; rather, she came to his apartment because they were still seeing each other (*id.*).

Respondent explicitly states that Petitioner exhausted this claim by raising it in his first Rule 3.850 motion (*see* Doc. 24 at 18; Doc. 25, Ex. G at 13, 16).

     1.    Clearly Established Supreme Court Law

As discussed *supra*, the two-prong Strickland standard is the legal standard applicable to claims of ineffective assistance of counsel.

2.      Federal Review of State Court Decision

The state court correctly identified the <u>Strickland</u> standard and, applying that standard, found that Petitioner failed to allege how he suffered prejudice as a result of counsel's alleged omissions (*id.*, Ex. H).  Therefore, the court denied the claim (*id.*).

The trial transcript shows that Marcia Oklejwicz identified a watch that she saw Carrie Smith wear (Doc. 25, Ex. C at 68–69).  On cross-examination, defense counsel established that Carrie told Ms. Oklejwicz that it was one of her male friend's watches (*id.* at 70).  Defense counsel asked Ms. Oklejwicz whether Carrie told her that it was her husband's (Petitioner's) watch, and she answered in the negative (*id.*).  Defense counsel then brought out during cross-examination of Brenda Barge that she (Ms. Barge) had given the watch to Petitioner as a graduation present (*id.* at 79–80).  Additionally, defense counsel brought out during cross-examination of Frances Gardner that Carrie and Petitioner broke up several times during their six-and-a-half-year relationship, but their break-ups usually lasted only a couple of weeks (*id.* at 64).  On direct examination of Petitioner, defense counsel elicited testimony that during the six-and-a-half-year relationship, Petitioner and Carrie broke up several times and reconciled, that Carrie would frequently drop by his apartment, and that she stated she was going to stop by his apartment the night before she was killed (*id.* at 319–20, 324).  Although defense counsel did not ask Petitioner whether Carrie had a key to his apartment, this evidence was brought out during the prosecutor's cross-examination of Petitioner (*id.* at 357).  In light of the fact that the jury was presented with evidence that Carrie Smith had a key to Petitioner's apartment, that she was wearing Petitioner's watch, and that she continued to come over to his apartment, Petitioner failed to establish that he was prejudiced by the alleged error on counsel's part.  Therefore, the state court reasonably applied <u>Strickland</u> in denying his claim.

D.      <u>Ground Four:  Trial court erred.  Objection.  Trial court erred in admitting the testimony of Juanita Carter.  She heard the defendant two weeks before the homicide make a statement that he was "within an inch of killing his wife and himself." Statement was too remote from the homicide to be relevant.</u>

(Doc. 13 at 5).  Petitioner asserts that the trial court erred by admitting testimony of Juanita Carter that two weeks before the homicide, she heard Petitioner state that he was "an inch from killing her [Carrie Smith]" and himself (*id.*; *see* Doc. 25, Ex. C at 92).  Petitioner alleges that the date of the statement was too remote from the date of the homicide to be relevant (*id.*).  He contends that the

trial court's ruling deprived him of due process and a fair trial, in violation of the Fifth, Sixth, and Fourteenth Amendments (*id.*).

Respondent argues that this claim is not cognizable on federal habeas review because it is a purely state law issue, despite Petitioner's characterization of it as a federal due process claim (Doc. 24 at 28–29).

1.      Clearly Established Supreme Court Law

Federal habeas relief is available to correct only constitutional injury.  28 U.S.C. § 2254(a); Wainwright v. Goode, 464 U.S. 78, 104 S. Ct. 378, 78 L. Ed. 2d 187 (1983); Engle v. Isaac, 456 U.S. 107, 102 S. Ct. 2976, 73 L. Ed. 2d 1361 (1981).  Errors of state law which do not infringe upon a defendant's constitutional rights provide no basis for federal habeas corpus relief.  Questions regarding state evidentiary rulings may be reviewed only to determine whether the alleged errors at trial "so infused the trial with unfairness as to deny due process of law."  Lisenba v. California, 314 U.S. 219, 228, 62 S. Ct. 280, 286, 86 L. Ed. 166 (1941); *see also* Estelle v. McGuire, 502 U.S. 62, 72, 112 S. Ct. 475, 482, 116 L. Ed. 2d 385 (1991).  The erroneous ruling must have "had substantial and injurious effect or influence in determining the jury's verdict."  Brecht v. Abrahamson, 507 U.S. 619, 637, 113 S. Ct. 1710, 1722, 123 L. Ed. 2d 353 (1993).

2.      Federal Review of State Court Decision

On direct appeal of his conviction, Petitioner argued that the trial court erred in admitting Juanita Carter's testimony regarding Petitioner's statement two weeks prior to the murder because the statement was too remote in time and too attenuated from the homicide to be relevant (*see* Doc. 25, Ex. D at 23–26).  Furthermore, Petitioner argued that the trial court error violated his rights to due process and a fair trial under the Fifth, Sixth, and Fourteenth Amendments (*id.* at 23).  The First DCA affirmed the conviction without written opinion (*id.*, Ex. F).

Although the state court's denial of Petitioner's claim without opinion provides no guidance to this court in determining the rationale for its decision, this court must still defer to the state court decision unless review of the record shows that decision to be unreasonable.  *See* Helton v. Secretary for Dept. of Corrections, 233 F.3d 1322, 1326–27 (11th Cir. 2000); Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000); Hannon v. Cooper, 109 F.3d 330, 335 (7th Cir. 1997).

A determination of whether an allegedly erroneous evidentiary ruling so infused the trial with unfairness as to deny due process of law is to be made in light of the evidence as a whole.  *See* Felker v. Turpin, 83 F.3d 1303, 1311–12 (11th Cir. 1996).  Viewing the evidence in this case in its entirety, the admission of Juanita Carter's testimony did not so infuse the trial with unfairness as to deny Petitioner fundamental fairness and due process of law.  Juanita Carter testified that Petitioner is the father of three of her children (Doc. 25, Ex. C at 91–92).  She testified that Petitioner telephoned her two weeks prior to Carrie Smith's death and stated that he was upset because Carrie withdrew money from a bank account that he and Carrie shared (*id.* at 92).  Ms. Carter further testified that Petitioner stated that when he was talking to Carrie about the withdrawal, he "was an inch from killing her" with a gun, and at the time he and Carrie were talking, he had a gun in the passenger side of the vehicle (*id.* at 92–93).  Ms. Carter testified that Petitioner told her that he was going to go home and kill himself after he killed Carrie (*id.* at 93–94).

One of the essential elements of the crime of first degree murder is that the defendant had a premeditated design to kill the victim.  Fla. Stat. § 782.04.  Evidence that two weeks prior to the murder, Petitioner told Ms. Carter he was upset with the victim because she withdrew money from their bank account and was "within an inch" of killing her indicated that Petitioner felt hostility toward the victim and contemplated killing her only two weeks before she was actually killed.  The jury could infer premeditation from this evidence.  Furthermore, the temporal connection between the statements and the killing was not so remote, nor was the subject matter of the statements too attenuated from the facts of the killing, to render the evidence non-probative of whether Petitioner planned to kill his wife.  Additionally, the statements tended to prove intent and motive — that Petitioner was motivated to kill his wife because she had withdrawn money from the bank account.  Thus, the undersigned concludes that the evidence of Petitioner's statements to Ms. Carter was probative on the issue of premeditation and motive.  Additionally, Petitioner's defense at trial was that the murder was self-defense, accidental, or a combination of the two.  Petitioner's statements two weeks prior to the killing that he was upset with the victim and was "an inch from killing her" tended to rebut the theories that he killed his wife in self-defense or accidentally.  *See* Ledlow v. State, 453 So. 2d 892, 893 (Fla. 1st DCA 1984) (in battery of wife case, testimony concerning defendant's statement about previously beating his wife was relevant to rebut defense that victim's

injuries were self-inflicted).  Moreover, the statements were not too remote in time or substance from the murder to render their probative value substantially outweighed by unfair prejudice.  *See* Hardy v. State, 716 So. 2d 761, 764 (Fla. 1998) (holding that defendant's statement, "If it ever came down to me and a cop, it was the cop," made two months prior to murder of police officer, was not remote in time and was relevant to State's contention that defendant intended to resolve any police confrontation with violence and that he would rather kill than be arrested; also rejecting defendant's contention that probative value of statement was greatly outweighed by its prejudicial effect); *but see* Trice v. State, 719 So. 2d 17, 19 (Fla. 2d DCA 1998) (statements made one year prior to murder too remote to be relevant; however, error in admitting statements was harmless).  Having determined that Ms. Carter's testimony was relevant, and its probative value was not substantially outweighed by unfair prejudice, the trial court's admission of the testimony did not violate Petitioner's right to a fair trial.  *See* Estelle, 502 U.S. at 70 (there is nothing in the Due Process Clause that requires the State to refrain from introducing relevant evidence).  Finally, this was not a case where the State's evidence of premeditation was weak.  Indeed, there was other strong evidence presented at trial that Petitioner consciously decided to kill his wife, including testimony that two witnesses heard a female scream "please!" in a long, drawn-out manner prior to hearing gunshots (*see* Doc. 25, Ex. C at 103–05, 112–14), testimony that Carrie Smith was on the ground then she received the two fatal gunshot wounds (*id.* at 295–96), testimony that Petitioner borrowed a .38 caliber gun two days prior to the murder and did not return it the same day as he usually did (*id.* at 74–76), testimony that Petitioner telephoned Carrie thirty-four (34) times in the four days prior to the murder, Petitioner's admission that Carrie had filed complaints against him for stalking (*id.* at 254, 361), and evidence that Petitioner happened to be driving around the area where Carrie lived and the bank where she was cashing her paycheck on the morning of the murder and happened to see her car at the bank and waited for her to leave the bank (*id.* at 200–01, 210–11, 223–24, 229–36, 243–49).  In light of this ample evidence of premeditation, admission of Juanita Carter's testimony did not so infuse the trial with unfairness as to deny due process.  Accordingly, the state court decision denying this claim was not contrary to or an unreasonable application of Supreme Court law.

      E.     <u>Ground Five:  Denial of effective assistance of counsel.  Witness['s] out of court statements was [sic] inconsistent to [sic] her trial testimony; witness['s] credibility should have been impeached.</u>

(Doc. 13, Ground Five, continuation page).  Petitioner asserts that defense counsel failed to impeach the following testimony by Alma Phillips:  (1) when she saw Petitioner on March 9, Petitioner did not tell her that he intended to turn himself in to law enforcement, and (2) she thought Petitioner walked with a limp on March 9 (*id.*).

Respondent explicitly states that Petitioner exhausted this claim by raising it in his first Rule 3.850 motion (*see* Doc. 24 at 30; Doc. 25, Ex. G at 13, 14).

        1.        Clearly Established Supreme Court Law

As discussed *supra*, the two-prong <u>Strickland</u> standard is the legal standard applicable to claims of ineffective assistance of counsel.

        2.        Federal Review of State Court Decision

The state court correctly identified the <u>Strickland</u> standard and, applying that standard, found that Petitioner failed to allege how he suffered prejudice as a result of counsel's alleged omissions (*id.*, Ex. H).  Therefore, the court denied the claim (*id.*).

The trial transcript demonstrates that defense counsel did in fact impeach the aforementioned testimony of Ms. Phillips with her prior inconsistent statements (*see* Doc. 25, Ex. C at 151–53).  Therefore, Petitioner failed to establish that counsel performed deficiently in this regard.  Furthermore, Petitioner failed to show a reasonable probability that the result of trial would have been different if counsel had somehow more vigorously impeached Ms. Phillips with the prior inconsistent statements.  Because Petitioner failed to satisfy either prong of the <u>Strickland</u> standard, the state court decision denying his claim was not unreasonable.

        F.        <u>Ground Six:  Conviction obtained by use of evidence gained pursuant to an unconstitution[al] search and seizure.</u>

(Doc. 13, Ground Six, continuation page).  Petitioner contends the sheriff's department illegally entered the backyard of 925 W. Lee Street and searched and seized a garbage can located there (*id.*).  Petitioner states the officers did not have consent of the owner or a warrant to search and seize the garbage can or its contents (*id.*).

Respondent argues Petitioner could have and should have raised this claim on direct appeal, but he did not (Doc. 24 at 40).  Therefore, the claim is procedurally barred from federal review (*id.*).

As summarized in <u>Bailey v. Nagle</u>, 172 F.3d 1299 (11th Cir. 1999), a state habeas petitioner who fails to raise his federal claims properly in state court is procedurally barred from pursuing the same claim in federal court absent a showing of cause for and actual prejudice from the default, or that a fundamental miscarriage of justice will result.  <u>Wainwright v. Sykes</u>, 433 U.S. 72, 87, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977); <u>Alderman v. Zant</u>, 22 F.3d 1541, 1549 (11th Cir. 1994).  A state court decision based on state law grounds that are independent of federal law and adequate to support the judgment may create a procedural default barring federal habeas review.  <u>Coleman</u>, 501 U.S. at 729.  Thus, where the state court correctly applies a procedural default principle of state law to arrive at the conclusion that the federal claims are barred, the federal court shall respect that decision.  <u>Nagle</u>, 172 F.3d 1299 (citing <u>Atkins v. Singletary</u>, 965 F.2d 952, 956 (11th Cir. 1992)).  In reviewing the state court's judgment, this court must ask whether the last state court to consider the claim(s) clearly and expressly stated that its judgment rested on a procedural bar, meaning, an adequate and independent state ground.  <u>Harris v. Reed</u>, 489 U.S. 255, 263, 109 S. Ct. 1038, 103 L. Ed. 2d 308 (1989).  Furthermore, an appellate court's per curiam affirmance of a decision that is based on a procedural bar is deemed to affirm the procedural bar.  <u>Yist v. Nunnemaker</u>, 501 U.S. 797, 803, 111 S. Ct. 2590, 2594, 115 L. Ed. 2d 706 (1991); <u>Harmon v. Barton</u>, 894 F.2d 1268, 1273 (11th Cir. 1990).

To establish "cause" sufficient to overcome the procedural bar, Petitioner must show the existence of "an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim" which prevented him from raising the claim.  <u>McCleskey</u>, 499 U.S. at 497 (quoting <u>Murray</u>, 477 U.S. at 488).  In order to show prejudice, Petitioner must show not merely that the error created a possibility of prejudice, but that it worked to his actual and substantial disadvantage, infecting the entire proceeding with error of constitutional dimensions. *See* <u>United States v. Frady</u>, 456 U.S. 152, 170, 102 S. Ct. 1584, 1596, 71 L. Ed. 2d 816 (1982).

In the instant case, Petitioner raised the instant claim as Ground One in his second Rule 3.850 motion (Doc. 25, Ex. O).  The trial court determined that the claim was procedurally barred because Petitioner could or should have raised it on direct appeal, but he did not (*id.*, Ex. H at 50).  In reaching this conclusion, the court relied upon <u>Montana v. State</u>, where the Florida First DCA

held that issues raised in a Rule 3.850 motion that could have been raised on direct appeal, for example claims alleging that evidence was improperly admitted, are procedurally barred.  597 So. 2d 334 (Fla. 1st DCA 1992).  The First DCA affirmed per curiam the trial court's decision (*id.*, Ex. T).

A review of Petitioner's brief on direct appeal of his conviction shows that he raised the following issues:

Issue I
The trial court erred in giving a jury deadlock charge followed by additional instruction advising the jury that if a verdict was not reached that night the jury would be returned the following morning to continue deliberating thereby coercing the jury to return a verdict.

Issue II
The trial court erred in admitting the testimony of Juanita Carter that she heard appellant, two weeks before the homicide, make a statement that he was "within an inch of killing" his wife and himself upon learning that his wife had withdrawn most of their money from an account, since this alleged statement was too remote from the homicide to be relevant.

(Doc. 25, Ex. D).

Initially, the trial court correctly applied the procedural default principle set forth in Montana.  Florida law provides that a criminal defendant may directly appeal the issue of improper admission of evidence.  *See* Montana, 597 So. 2d 334.  Furthermore, Florida courts consistently apply the procedural rule that issues that could or should have been raised on direct appeal are procedurally barred from collateral review.  Therefore, Petitioner procedurally defaulted Ground Six of the instant petition.

In his reply to Respondent's answer, Petitioner states that "cause and prejudice" and "actual innocence, fundamental miscarriage of justice" are exceptions to the procedural bar, and he states the legal standards that a habeas petitioner must meet in order for these exceptions to apply, but he does not allege any facts establishing cause for his failure to raise the Fourth Amendment issue on appeal (*see* Doc. 33 at 11–12).  Furthermore, Petitioner has failed to establish a fundamental miscarriage of justice through a colorable showing of actual innocence as he does not allege the existence of new evidence that was not presented at trial.  *See* Schlup, 513 U.S. at 327; *see also* House v. Bell, --- U.S. ---, 126 S. Ct. 2064, 165 L. Ed. 2d 1 (2006).  As Petitioner procedurally

defaulted this claim in the state courts, and he has failed to show the requisite cause to excuse his procedural default or satisfy the fundamental miscarriage of justice exception to the procedural bar, this claim is barred from federal habeas review.

        G.      <u>Ground Seven:  Violation of Frye hearing, court error.</u>

(Doc. 13, Ground Seven, continuation page).  Petitioner contends that the trial court erred by permitting testimony of M. Clanton, a serologist, regarding the presence of Petitioner's DNA on a blue jacket, identified as Exhibit 39 during trial (*id.*).  Petitioner states that Ms. Clanton was the only expert to conduct scientific testing on the evidence, but <u>Frye</u> requires testimony of impartial experts and scientists in the same field as to the underlying scientific principle and the testing procedures used (*id.*).  He further contends that <u>Frye</u> requires that the evidence be actually tested by more than one expert or scientist (*id.*).  Therefore, he contends, the State failed to lay a proper foundation for admission of Ms. Clanton's testimony, and the court erred by admitting the evidence in the absence of a proper foundation (*id.*).

        Respondent states that Petitioner raised this claim for the first time in his appeal of the trial court's dismissal of his second Rule 3.850 motion (Doc. 24 at 41).  Respondent contends that the claim should properly have been raised on direct appeal of Petitioner's conviction, and because Petitioner failed to properly present the claim to the state courts, and it can no longer be litigated under state procedural rules, the claim is procedurally barred from federal review (*id.* at 46).

        In his reply, Petitioner argues that he exhausted his claim by raising it in a motion for post-conviction relief and his appeal of the trial court's denial of the motion (*see* Doc. 33 at 13).

        Upon review of the record, the undersigned concludes that the claim is procedurally barred from federal review.  Petitioner raised the <u>Frye</u> claim in his first Rule 3.850 motion (*see* Doc. 25, Ex. G at 8, 10).  The trial court determined that the claim was procedurally barred because it could and should have been raised on direct appeal (*id.*, Ex. H (citing <u>Torres-Arboleda v. Dugger</u>, 636 So. 2d 1321, 1323–24 (Fla. 1994))).  The First DCA affirmed the trial court's application of the procedural bar (*id.*, Ex. I).  Petitioner raised the claim again in his initial brief of his appeal of the trial court's denial of his second Rule 3.850 motion (*see id.*, Ex. R); however, the First DCA

affirmed the trial court's application of the procedural bar to all claims of trial court error raised in the motion (*see id.*, Exs. Q, T).[6]

The state courts correctly applied the procedural default principle set forth in Torres-Arboleda and Bruno v. State that an issue that could have been raised on direct appeal, but was not, is not cognizable through collateral attack.  Torres-Arboleda, 636 So. 2d at 1323–24; Bruno v. State, 807 So. 2d 55, 63 (Fla. 2001).  It is firmly established in Florida law that a claim of trial court error, including improper admission of scientific evidence, may be raised on direct appeal.  *See* Bruno, 807 So. 2d at 63; Montana, 597 So. 2d 334; Lemour v. State, 802 So. 2d 402 (Fla. 3d DCA 2001) (reviewing claim on direct appeal of defendant's conviction that state failed to establish predicate required under Frye for admission of DNA evidence).  Furthermore, this procedural rule is regularly followed by the Florida courts.  Therefore, Petitioner procedurally defaulted Ground Seven of the instant petition.

As with Ground Six, in his reply to Respondent's answer, Petitioner states that "cause and prejudice" and "actual innocence, fundamental miscarriage of justice" are exceptions to the procedural bar, and he states the legal standards that a habeas petitioner must meet in order for these exceptions to apply, but he does not allege any facts establishing cause for his failure to raise the Frye issue on appeal (*see* Doc. 33 at 13–14).  Furthermore, Petitioner has failed to establish a fundamental miscarriage of justice through a colorable showing of actual innocence as he does not allege the existence of new evidence that was not presented at trial.  *See* Schlup, 513 U.S. at 327.  As Petitioner procedurally defaulted this claim in the state courts, and he has failed to show the requisite cause to excuse his procedural default or satisfy the fundamental miscarriage of justice exception to the procedural bar, this claim is barred from federal habeas review.

H.      Ground Eight:  Prosecution misconduct, due process.

---

[6]The trial court determined that all of Petitioner's claims of trial court error and prosecutorial misconduct were procedurally barred because they could or should have been raised on direct appeal (*see* Doc. 25, Ex. Q (citing Bruno v. State, 807 So. 2d 55, 63 (Fla. 2001) (holding that claims of "trial court error generally can be raised on direct appeal but not in a Rule 3.850 motion); Rose v. State, 675 So. 2d 567 (Fla. 1996) (holding that claims of prosecutorial misconduct are barred from presentation in Rule 3.850 proceeding as they could or should have been raised on direct appeal); Montana v. State, 597 So. 2d 334 (Fla. 1st DCA 1992) (holding that the improper admission of evidence could or should have been raised on direct appeal))).

(Doc. 13, Ground Eight, continuation page).  Petitioner contends that the prosecutor made improper comments during trial, including an incorrect description of Petitioner's physical size and characterizing Petitioner as a liar who wanted sympathy (*id.*).

Respondent states that Petitioner raised this claim in his second Rule 3.850 motion (Doc. 24 at 47).  Respondent contends that the claim is procedurally barred from federal review because the claim should properly have been raised on direct appeal of Petitioner's conviction (*id.* at 50).

Upon review of the record, the undersigned concludes that the claim is procedurally barred from federal review.  Petitioner raised the claim of improper comments by the prosecutor in his second Rule 3.850 motion (*see* Doc. 25, Ex. P at 26–27).  The trial court determined that the claim was procedurally barred because it could and should have been raised on direct appeal (*id.*, Ex. H (citing Bruno, 807 So. 2d at 63)).  The First DCA affirmed the trial court's application of the procedural bar (*id.*, Ex. I).

The state courts correctly applied the procedural default principle set forth in Bruno that an issue that could have been raised on direct appeal, but was not, is not cognizable through collateral attack.  807 So. 2d at 63.  It is clearly established in Florida law that a claim of improper prosecutorial comments may be raised on direct appeal.  *See* Rose v. State, 675 So. 2d 567 (Fla. 1996) (holding that claims of prosecutorial misconduct are barred as they could or should have been raised on direct appeal).  Furthermore, as previously discussed, Florida courts regularly follow this procedural rule.  Therefore, Petitioner procedurally defaulted Ground Eight of the instant petition.

In his reply to Respondent's answer, Petitioner states that the procedural default of this issue was a result of constitutionally ineffective assistance of counsel (Doc. 33 at 16).  To the extent Petitioner alleges that his appellate counsel was ineffective for failing to raise the prosecutorial misconduct claim on direct appeal, he has failed to show that his appellate counsel performed in a deficient manner.  The standards and guidelines for judging a claim of ineffective assistance of counsel are the same for charges relating to both trial and appellate counsel.  Smith v. Robbins, 528 U.S. 259, 287–89, 120 S. Ct. 746, 145 L. Ed. 2d 756 (2000) (citing Strickland, 466 U.S. 668).  A petitioner must first show that counsel unreasonably failed to raise a particular claim.  *Id.* (citing Strickland, 466 U.S. at 687–91).  If he succeeds in making such a showing, he then has the burden of demonstrating a reasonable probability that, but for his counsel's unreasonable failure to raise the

claim, he would have prevailed on his appeal.  *Id.* (citing <u>Strickland</u>, 466 U.S. at 694).  "[A]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal."  *Id.* at 288 (citing <u>Jones v. Barnes</u>, 463 U.S. 745, 103 S. Ct. 3308, 77 L. Ed. 2d 987 (1983)).  Where an issue is not preserved for appellate review, appellate counsel's failure to raise the issue is not constitutionally deficient, as it is based on the reasonable conclusion that the appellate court will not hear the issue on its merits.  <u>Atkins v. Singletary</u>, 965 F.2d 952, 957 (11th Cir. 1992); <u>Francois v. Wainwright</u>, 741 F.2d 1275, 1285-86 (11th Cir. 1984).

In the instant case, the trial transcript shows that Petitioner's trial counsel did not object to the prosecutor's comments during closing argument (*see* Doc. 25, Ex. C at 406, 407, 410–14, 416, 426, 430–37).  Therefore, Petitioner's appellate counsel was not deficient for failing to raise the issue on direct appeal.

Furthermore, Petitioner's trial counsel was not deficient for failing to object to the prosecutor's comments because the comments were not improper.  Regarding the prosecutor's suggestion to the jury that Petitioner's testimony was not truthful, these statements would make for a constitutional claim only if it can be said that the prosecutor voiced a personal opinion that was based upon evidence that had not been presented to the jury.  *See* <u>United States v. Granville</u>, 716 F.2d 819, 822 (11th Cir. 1983); <u>United States v. Rodriguez</u>, 585 F.2d 1234, 1243–44 (5th Cir. 1978); *see also* <u>Jones v. State</u>, 449 So. 2d 313, 314 (Fla. 5th DCA 1984).  In the instant case, the prosecutor's remarks clearly centered upon first-hand evidence, namely, that Petitioner's description of the events surrounding the killing of his wife was inconsistent with the other evidence introduced at trial, that Petitioner's testimony was inconsistent with his prior statements to police, and that Petitioner admitted during his testimony that he lied to police (*see* Doc. 25, Ex. C at 355–69).  Such comments were not improper, as they simply asked the jury to consider whether they believed Petitioner's testimony.  Furthermore, the prosecutor's description of Petitioner's physical size at the time of the murder was based upon Officer Sanderson's testimony to these facts (*see* Doc. 25, Ex. C  at 243, 432).  Moreover, since the remarks contained no implication that the prosecutor was considering outside information, no prejudice was evident.  *See* <u>United States v. Lacayo</u>, 758 F.2d 1559, 1565–66 (11th Cir. 1985).  Petitioner has failed to demonstrate that his trial counsel had a

meritorious basis for objecting to the prosecutor's comments; therefore, he has failed to show that his counsel performed deficiently.  Because Petitioner has failed to establish that he received ineffective assistance of trial counsel or appellate counsel with regard to this issue, he has likewise failed to show cause for purposes of overcoming the procedural bar to federal review of this claim.

Furthermore, Petitioner has failed to establish a fundamental miscarriage of justice through a colorable showing of actual innocence as he does not allege the existence of new evidence that was not presented at trial.  *See* Schlup, 513 U.S. at 327.  As Petitioner procedurally defaulted this claim in the state courts, and he has failed to show the requisite cause to excuse his procedural default or satisfy the fundamental miscarriage of justice exception to the procedural bar, this claim is barred from federal habeas review.

I.      Ground Nine:  Denial of effective assistance of counsel, Allen charge violation.

Petitioner next claims that his appellate counsel failed to raise on appeal the issue of the trial court's giving an Allen[7] or "deadlock" instruction (Doc. 13, Ground Nine, continuation pages). Petitioner asserts that if appellate counsel had pursued this issue on appeal, there is a reasonable probability that the outcome of the appeal would have been different (*id.*).

1.      Clearly Established Supreme Court Law

As discussed *supra*, the standards and guidelines for judging a claim of ineffective assistance of counsel are the same for charges relating to both trial and appellate counsel.  Smith, 528 U.S. at 287–89 (citing Strickland, 466 U.S. 668).  A petitioner must first show that counsel unreasonably failed to raise a particular claim.  *Id.* (citing Strickland, 466 U.S. at 687–91).  If he succeeds in making such a showing, he then has the burden of demonstrating a reasonable probability that, but for his counsel's unreasonable failure to raise the claim, he would have prevailed on his appeal.  *Id.* (citing Strickland, 466 U.S. at 694).

2.      Federal Review of State Court Decision

Petitioner raised this claim in a petition for writ of habeas corpus filed with the First DCA (Doc. 25, Ex. J).  The state court denied the claim without written opinion (*id.*, Ex. K).  As previously discussed, although the state court denial of Petitioner's claim without opinion provides

---

[7]Allen v. United States, 164 U.S. 492, 17 S. Ct. 154, 41 L. Ed. 528 (1896).

no guidance to this court in determining the rationale for its decision, this court must still defer to the state court decision unless review of the record shows that decision to be unreasonable.  *See* Helton, 233 F.3d at 1326–27.

The record establishes that Petitioner's appellate counsel raised on appeal the issue of trial court error in giving the deadlock instruction (*see* Doc. 25, Ex. D at 19–22).  Therefore, the state court decision denying Petitioner's claim of ineffective assistance of appellate counsel was not unreasonable.  Accordingly, Petitioner is not entitled to federal habeas relief on this claim.

> J.    Ground Ten:  Denial of effective assistance of counsel.  Counsel failed to advise the defendant of a plea offer.  Defendant was not present in court during the time offer was present [sic].

(Doc. 13, Ground Ten, continuation pages).  Petitioner alleges that at a pre-trial hearing, at which he was not present, the State made a plea offer of a twenty-year sentence in exchange for a guilty plea to second degree murder (*id.*; Doc. 33 at 20).  Petitioner alleges his counsel failed to inform him of this offer, and if he had been informed of it, he would have accepted it (Doc. 13, Ground Ten, continuation pages; Doc. 33 at 20).

Respondent concedes that Petitioner exhausted this claim by raising it in both of his Rule 3.850 motions (*see* Doc. 24 at 57).

> 1.    Clearly Established Supreme Court Law

As previously discussed, the two-pronged Strickland standard applies to claims of ineffective assistance of counsel.

> 2.    Federal Review of State Court Decision

Petitioner raised this claim in both of his Rule 3.850 motions (*see* Doc. 25, Ex. G at 13, Ex. P at 23–25).  In both written opinions denying Petitioner's claim the state court correctly stated the Strickland standard as the applicable legal rule (*see id.*, Exs. H, Q).  The trial court denied the claims on the ground that Petitioner failed to allege how he was prejudiced by counsel's alleged failure to communicate a plea offer (*see id.*, Exs. H, Q).

Several Circuit Courts, including the Eleventh Circuit, have held that counsel is constitutionally ineffective in failing to communicate the existence and terms of a plea offer to his client.  *See* Diaz v. United States, 930 F.2d 832 (11th Cir. 1991) (citing Johnson v. Duckworth, 793 F.2d 898, 902 (7th Cir. 1986) (client must be involved in decision to accept or reject plea offer, and

failure to inform client of offer constitutes ineffective assistance)); <u>Cullen v. United States</u>, 194 F.3d 401 (2d Cir. 1999); <u>United States v. Blaylock</u>, 20 F.3d 1458 (9th Cir. 1994).  However, to succeed on such a claim, a habeas petitioner must provide factual support showing that the State made a plea offer, and defense counsel did not communicate the plea offer to the petitioner.  Additionally, the habeas petitioner must allege facts showing a reasonable probability that he would have accepted the plea offer if counsel had communicated it to him.

In the instant case, Petitioner has not alleged the existence of any evidence to support his assertion that the State offered a twenty-year sentence in exchange for Petitioner's guilty plea to a reduced charge.  Petitioner alleges he was not present when the offer was made, therefore, his assertion that such an offer was made is not based upon his personal knowledge.  Furthermore, Petitioner has not submitted any documentation, such as a proposed plea agreement, correspondence between the State and defense counsel, or notes from defense counsel's file, indicating that such an offer was made.  Although Petitioner asserted in his first Rule 3.850 motion that after his trial, he was informed by "a relative" that an offer of twenty years had been made, Petitioner did not identify the relative or otherwise support this assertion with any facts, nor did he submit a statement from the relative supporting this claim.

Additionally, review of Petitioner's allegations in both of his Rule 3.850 motions confirms that Petitioner failed to allege that he was prejudiced by counsel's alleged error, as in neither motion did Petitioner allege he would have accepted the alleged plea offer if counsel had communicated it to him (*see* Doc. 25, Ex. G at 13, Ex. P at 23–25).  Therefore, the state court's denial of Petitioner's claim as legally insufficient was not an unreasonable application of <u>Strickland</u>.

Accordingly, it is respectfully **RECOMMENDED**:

That the amended petition for writ of habeas corpus (Doc. 13) be **DENIED**.

At Pensacola, Florida, this <u>14</u>th day of March 2007.


/s/ Elizabeth M. Timothy                                  
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**